15596

HUNTER v. BOYD ET AL.

(28 S. E. (2d), 413)

. . . . . . . . . . . . , 1943.

*Mr. B. F. Martin,* of Greenville, S. C., Counsel for Appellant,

*Messrs. Mann & Arnold,* of Greenville, S. C., Counsel for Respondents,

December 3, 1943.

CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, delivered the unanimous Opinion of the Court:

This case comes to us upon an appeal from an order of the Greenville County Court sustaining the demurrer of the defendants to the complaint for insufficiency of factual allegations in an action brought to recover actual and punitive damages for the death by alleged wrongful act, neglect or default on the part of the defendants, of Cyril Hunter, a small boy seven years of age, the beneficiaries of such action being his parents.

It appears from the complaint that the child, Cyril Hunter, plaintiff's intestate, was a pupil in the West Gantt School in Greenville County, and that the defendant Boyd was the principal of the school and also the owner and operator of the school bus named in the title, the same being used "for the purpose of transporting the pupils of the school from their homes to the school, and from the school building to their homes."

It further appears from the complaint that on the night of October 25, 1940, there was a Hallowe'en play and party in the school building attended by pupils of the school, including Cyril Hunter. And it is also alleged that Cyril Hunter was committed by his parents to the protective care and custody of the defendant Boyd as the principal of the school and driver of the bus for the purpose of transporting him from the school building to his home after the play and party was over, together presumably with other pupils of the school; the home of Cyril Hunter being on U. S. Highway No. 29. We quote the following excerpt from the complaint: "The home was on what is known as U. S. Highway No. 29, and at that time of night, cars were passing frequently in each direction. Plaintiff ·is informed and believes that it was the duty of the defendant Boyd to protect and care for, and safely to carry the child from his home to the school and from the school back to his home; nevertheless, he neg-·ligently and carelessly failed to so protect, care for, and carry the child, and negligently operated the bus in question *by stopping same at a dangerous place, in the dark, on the*

*much traveled highway referred to, with the intention of putting the child off there in the dark, and actually putting him off, quite a distance (some 167 yards) from his home, on the side of the highway opposite the said home, the place and the circumstances being obviously highly dangerous to the child.* It was necessary for the child to cross the highway to get to the side on which his home was located—and, regardless of the fact that cars were approaching the bus from both directions, the defendant, Boyd, did not care for and protect the child and see that he got safely across the highway, nor protect him in any manner whatever *against the evident danger from approaching cars—but on the contrary left him in a highly dangerous situation with the result that as the bus started off* he ran from behind it to get across the road in front of another car that was driving in the same direction behind the bus, he was struck by the approaching north-bound Plymouth car, and as a result received injuries from which, shortly thereafter, he died." (Italics added.)

It is alleged that this occurrence took place between 10:30 and 11 o'clock on the night of October 25, 1940. And the last two paragraphs of the complaint are to the effect that the death of plaintiff's intestate was due to the negligence and recklessness of the defendants, to the damage of the beneficiaries in the sum of $5,000.00, for which judgment is sought.

A demurrer was in due course filed to the complaint in behalf of both defendants, the grounds of the demurrer being stated separately as to each. The demurrer in behalf of the defendant, Boyd, is in substance that the complaint does not allege facts showing actionable negligence or recklessness, and that on the contrary the complaint shows on its face that the death of the child was occasioned by an independent and intervening cause, to wit, an automobile operated by some other person. The demurrer as to the school bus is to the same effect, except that there are added grounds stating that the school bus in no way struck or injured plain-

tiff's intestate and that he was not injured by any negligent or reckless operation thereof.

The County Judge sustained the demurrer and stated in his order that the complaint fails to allege any negligent or reckless act on the part of the defendants as a proximate cause of the alleged injury "except in the nature of conclusions by the pleader;" and that it further affirmatively appears that there was an entirely independent, efficient agency intervening which proximately caused the injury and resulting death. The exceptions of the appellant to this order challenge the correctness of these findings.

The school bus is a distinctly modern invention which has become a very important part of our educational system. But while it is comparatively new in operation the time honored principle of due care is applicable to a driver thereof. However, in view of the fact that the passengers transported on a bus of this character are children, many of whom of very tender years, it is manifest that the standard of due care would comprehend a high degree of caution and vigilance with respect to such a child. 42 C. J., 1049-51.

The statute of 1937 relating to school buses, now embodied in Section 1626-3, Code 1942, contains many provisions in regard to the equipment and operation of such buses, but these provisions do not limit in any way the common law requirement that due care shall be exercised, for on the contrary the statute is obviously designed to promote the safety of children using a school bus.

Applying these principles to the complaint herein, especially the part thereof above quoted, it seems apparent to us that it contains factual allegations, not mere conclusions of law, tending to show actionable negligence (or recklessness) on the part of the driver of the bus. Certainly it was his duty to stop the bus at a reasonably proper place, to the end that plaintiff's intestate might reach

his home in safety. But it is alleged that in breach of such duty the place at which the bus was stopped on this occasion was dangerous because it was on a much-traveled highway at quite a distance (some 167 yards) from his home on the opposite side of the highway, and at the time in question it was dark, being between 10:30 and 11 o'clock at night. And it is further alleged that the driver of the bus left the seven-year-old child, who had to cross the highway in order to get to his home, in a highly dangerous situation, for as the bus started off he ran from behind it to get across the highway when he was struck by the approaching northbound Plymouth car which resulted in his death.

These allegations of fact, if established by the evidence, would definitely tend to show negligence (or recklessness) on the part of Boyd. Conceding, as was said by the learned County Judge, that a school bus driver would not be required to get out of the bus and direct or escort children across the road, he is not relieved from the responsibility of selecting a reasonably proper place for the unloading of his passenger pupil or pupils. And the statute of 1934, now embodied in Section 1626-1, Code 1942, contains the following language: "All motor vehicles traveling upon the public highways of this State are required to come to a full and complete stop before passing any school bus which has stopped for the purpose of taking on and discharging school children and shall remain stopped until said children are taken on or discharged *and until such school bus has moved on.*" (Italics added.) And this Court in the case of *Fisher v. J. H. Sheridan Co.,* 182 S. C., 316, 189 S. E., 356, 108 A. L. R., 981, construed this statute to mean that an automobile passing a school bus must stop regardless of which way it is traveling. In other words, all motor vehicles without regard to the direction in which they are traveling must remain stopped until the children are taken on or discharged *and until such school bus has moved on.*

And while we would lay down no hard and fast rule applicable to every case, we think it may justly be said that circumstances indicating danger might require the driver of a school bus to unload his passenger pupil or pupils on the side of the highway next to their homes; or if this be not reasonably practicable under existing conditions the bus should at least remain stopped for a sufficient length of time to allow the pupil or pupils alighting therefrom to cross the highway to the side thereof on which their homes are located.

It is stated in the brief in behalf of the respondents that the driver of the Plymouth car which struck the plaintiff's intestate did not stop as the law requires. There is no allegation on this subject in the complaint, and hence it is not before us on this appeal, but if we are to enter into the realm of supposition it might perhaps be inferred that if the school bus had remained standing the driver of the Plymouth car as it approached would have stopped. Certainly the moving of the school bus was a signal indicating to other cars approaching from both directions that they might proceed.

Nor do we think it can be declared as a matter of law from the allegations of the complaint that there was an independent, intervening cause which insulated the alleged negligence of the driver of the school bus, because the test is *foreseeability*. The cases cited by the County Court, to wit, *Carter v. Atlantic Coast Line R. Co.,* 109 S. C., 119, 95 S. E., 357, 11 A. L. R., 1411, and *Locklear v. Southeastern Stages, Inc.,* 193 S. C., 309, 8 S. E. (2d), 321, 325, are readily distinguishable on the facts from the case at bar, and especially in the latter decision the applicable principles are stated in clear and appropriate language. We quote the following from the opinion of Mr. Justice Fishburne in the *Locklear case:* "The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The

test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising." See, also, *Pfaehler v. Ten Cent Taxi Co.,* 198 S. C., 476, 18 S. E. (2d), 331.

We think the allegations are sufficient to warrant the inference that in the exercise of due care the defendant, Boyd, might reasonably have foreseen that the plaintiff's intestate was in danger of being struck by an automobile such as the north-bound Plymouth car. Indeed, specific reference is made in the complaint to "the evident danger from approaching cars." Of course, we are dealing here with allegations and not with evidence.

The order of the County Court should therefore be reversed as to the defendant, Boyd.

The demurrer as to the school bus, however, requires us to consider a very different question. There is no mention made in the order of the County Court or in appellant's brief in regard to the special grounds of the demurrer in behalf of the school bus, but reference is made to the same in respondents' brief wherein it is urged that at all events there is no cause of action alleged as to the bus, since it did not strike plaintiff's intestate or injure him in any way. But we need not consider this point, because in our view of the case the Court clearly had no jurisdiction of the subject-matter in so far as the school bus is concerned. It is true that this question was not raised in the Court below or in this Court by counsel for any of the parties, but a jurisdictional question of this kind can be and should be taken notice of by the Court *ex mero motu,* since lack of jurisdiction of the subject-matter cannot be waived even by consent. *Williamson v. Richards, Governor,* 158 S. C., 534, 155 S. E., 890.

The Motor Vehicle Lien Act as it stood at the time of the death of plaintiff's intestate on October 25, 1940, and at the time this action was commenced, to wit, on October 29, 1941, is as follows: "When a motor vehicle is operated in

violation of the provisions of law, or negligently and carelessly, and when any person receives personal injury thereby, or when a buggy or wagon or other property is damaged thereby, the damages done to such person or property shall be and constitute a lien next in priority to the lien for state and county taxes upon such motor vehicle, recoverable in any court of competent jurisdiction, and the person sustaining such damages shall have a right to attach said motor vehicle in the manner provided by law for attachments in this State: provided, that this section shall not be effective in case the motor vehicle shall have been stolen by the breaking of a building under a secure lock, or when the vehicle is securely locked." Sec. 8785, Code 1932, Sec. 8792, Code 1942.

We believe it is apparent even from a casual reading of the act that the lien and right of attachment are given only to the *person who receives personal injury,* and that no lien whatever is given in favor of the father and mother or other beneficiaries under the terms of Lord Campbell's Act (Sections 411 and 412, Codes 1932 and 1942). There being no lien or right of attachment, the suit against the bus must therefore fail. This conclusion is supported by the provision contained in Section 411, that "the *person* or *corporation* who would have been liable, if death had not ensued, shall be liable to an action for damages." (Italics added.) This evidently would not cover an action *in rem* against a motor vehicle. See, also, *Randal v. State Highway Dept.,* 150 S. C., 302, 148 S. E., 57.

The General Assembly has by an Act approved January 29, 1942 (Acts 1942, page 1471) amended the original Act (quoting from the title) "by extending the provisions thereof to the personal representative or beneficiaries of a person killed by a motor vehicle operated in violation" thereof. But of course the amended Act has no application to the case at bar.

We are, therefore, of opinion that the order of the County Court should be reversed as to the defendant, Boyd, as hereinbefore indicated (with leave to answer the complaint within twenty (20) days from the date of the filing of the remittitur herein), while it should be affirmed, for the reasons above stated, as to the defendant school bus.

Reversed as to the respondent Boyd and affirmed as to the respondent school bus.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.